## North Penn Volunteer Fire Company Appeal

Before Knight, P. J., and Corson and Dannehower, J J.

*Jacob B. Santangelo, Louis J. Roma,* and *John M. Smith, Jr.,* for appellant.

*Edward B. Hannum,* for Pennsylvania Liquor Control Board.

KNIGHT, P. J., December 23, 1946.—This is an appeal by the North Penn Volunteer Fire Company from the refusal of the Liquor Control Board to grant a liquor license to the company.

The Liquor Control Board assigned seven reasons for refusing the license. The fourth, fifth and sixth reasons are technical, and have to do with the administration of the club, and its set up as to dues and classification of members. In our opinion, these reasons were eliminated by the amendments to the bylaws, adopted July 11, 1946.

The remaining four reasons raise the fundamental and important questions:

First: Is the granting of a liquor license prohibited by the Liquor License Quota Act of June 24, 1939, P. L. 806?

Second: Is the North Penn Volunteer Fire Company a club as defined in the Liquor Control Act? (Act of November 29, 1933, spec. sess. P. L. 15.)

Applicant is a volunteer fire company, incorporated in 1930 for the declared purpose of supporting and operating fire apparatus and other equipment for the control of fires. The company now holds, and has held since about 1936, a club malt beverage license, under the Beverage License Law of May 3, 1933, P. L. 252, commonly called a beer license, which it wants to surrender and receive a club liquor license under the Liquor Control Act of 1933, supra, commonly called a liquor license.

According to the 1940 United States census, the Borough of North Wales, in which applicant is located, has a population of 2,450; the quota of licenses for the borough is three and the number of retail licenses now in effect is three.

This court has held on several occasions that clubs are within the scope of the Quota Law, and we see no reason to recede from this position in the present case. If this is to be considered as a new application, then the appeal must be dismissed, for the quota of the Borough of North Wales is filled.

In Pennsburg Fire Co. No. 1 Application, 62 Montg. Co. Law Reporter 227 (1946), this court held that the exchange of a beer license for a liquor license did not constitute the issuance of a new license under the provisions of the Quota Law, supra.

Since that decision was handed down a number of courts throughout the Commonwealth have reached a different conclusion. We have read some of these decisions, and have come to the conclusion that our interpretation on the Quota Law cannot be sustained. In the Pennsburg case we considered the number of licenses, without giving proper consideration to the difference in the types of licenses as authorized by the several statutes.

We also failed to give proper weight to the dictum of the Superior Court in Kester's Appeal, 140 Pa. Superior Ct. 293 (1940). At the time the Pennsburg decision was handed down, we did not know that the exact point now before us was argued before the Superior Court in that case.

Under the law as it now exists, the Superior Court could not have created a binding precedent, but obviously it intended the dictum of its distinguished president judge to be a guide to the lower courts, and a help toward that uniformity in the interpretation of the licensure acts which is so sadly lacking today.

We therefore believe we should join with the large majority of the courts who have held that the licenses issued under the several statutes cannot be exchanged, not only because this will make for uniformity in interpretation, but because we are convinced that our decision in the Pennsburg case was erroneous.

We have not attempted to discuss all of the diverse decisions on the point involved, but we are appending a footnote of the authorities we have considered in reaching this decision.*

Is the North Penn Volunteer Fire Company a club as defined by the Liquor Control Act?

The Liquor Control Act authorizes the licensing of clubs, which it defines in section 2 (47 PS §§744-2) as:

". . . Any reputable group of individuals associated together not for profit for legitimate purposes of mutual benefit, entertainment, fellowship or lawful convenience, having some primary interest and activity to which the sale of liquor shall be only sec-

---

* Kester's Appeal, 140 Pa. Superior Ct. 293 (1940); Appeal of American Club of Coplay, Pa., 21 Leh. L. J. 109 (1944); Appeal of St. Albertus Catholic Beneficial Assn., Q. S. of Philadelphia County, Misc. Docket 989, Judge Carroll, 1946; Q. S. of Delaware County, June term, 1946, Judge MacDade; Brochure of Pennsylvania Alcoholic Beverage Study, Inc., and the supplements thereto; In re Gaal's Appeal, 57 D. & C. 102.

ondary . . . and which regularly occupies, as owner or lessee, a clubhouse or quarters for the use of members."

The North Penn Volunteer Fire Company occupies two buildings in North Wales, the fire house, which houses the fire-fighting equipment, and a clubhouse about 800 feet from the fire house, where the social activities of the club take place.

The membership is divided into two classes: Active, or those who actually fight fires, or take care of the equipment; and contributing, or those who do not participate in fighting fires, but are more or less social members, entitled to the privileges of the clubhouse.

The social activities consist of dances held twice each week, card playing and other games, and until this application was made, the playing of slot machines.

Only active members are entitled to vote. They elect a board of 12 trustees, who in turn elect the officers of the company.

It is argued that the primary object of this company is the sale of intoxicating beverages, and the fighting of fires is but a secondary interest, and to support this argument it is pointed out that this company has about 75 active members, and about 750 contributing members.

In every volunteer fire company that we know of, whether holding a license or not, the vast majority of the members do not take part in the fire-fighting activities; this duty is performed by a small experienced and trained group of the members. The mere fact that only about one tenth of the members of the applicant company engage in fighting fires is not enough to convince us that this worthy activity is only a secondary purpose of the fire company.

The company, during 1945, had a gross income in excess of $44,000, with a net profit of about $7,000. Over three fourths of its income was derived from the sale of beer and the take of slot machines. The

evidence shows that the slot machines have been removed from the clubhouse. The profit is used for the maintenance and replacement of fire-fighting equipment, and toward a fund to build a new fire house.

Counsel for the Liquor Control Board points to this large income and its sources as convincing evidence that the principle and main purpose of the company is the sale of intoxicating beverages and gambling.

There is no volunteer fire company that we know of that is or could be maintained entirely by the dues paid by its members. These worthwhile organizations must depend on income from other sources, such as contributions, suppers, fairs, income from the sale of intoxicating beverages in some cases, and grants from public funds. This does not mean that the North Penn Volunteer Fire Company should be placed in the category of those clubs which could not exist without the sale of intoxicating liquor, and hence not entitled to a license, as was held in Slavic Citizens' Club, 14 Pa. Dist. R. 588, and Appeal of Parris Social Club, Inc., 21 Erie 163.

This company is necessary to the safety of the lives and property of the citizens of North Wales; it performs an important function in reducing insurance rates and rendering other public services, and it will not be allowed to go out of existence, whether licensed or not.

We do not wish to be understood as approving all of the social activities of this company; what we do decide is that we are not prepared to say on the record before us, that this company is not a club within the meaning of the Liquor Control Act.

And now, December 23, 1946, the appeal is dismissed, and the order of the Liquor Control Board refusing a liquor license to the North Penn Volunteer Fire Company, is affirmed.